UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Janice M. Dow,

    Plaintiff,

v.                                        Civil Action No. 2:10-CV-126

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 10, 18)

Plaintiff Janice Dow brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Dow's motion to reverse the Commissioner's decision (Doc. 10), and the Commissioner's motion to affirm (Doc. 18).

For the reasons stated below, I recommend that Dow's motion be GRANTED in part. I further recommend that the Commissioner's motion to affirm be DENIED.

## Background

Dow was born in 1965, and was twenty-seven years old on the alleged disability onset date of July 15, 1993. (Administrative Record ("AR") 9, 142.) She attended high school at an alternative placement for emotionally disturbed students from 1980 to 1983 but graduated from high school in a regular placement her final year. (AR 164-65, 350.)

Dow worked in the medical billing field both full- and part-time, intermittently between 1991 and 2006, and as a substitute cook. (AR 151, 166, 178.) Between 1984 and 2004, Dow attempted numerous other jobs, but was not able to retain them. (AR 223-25.) Dow lives with her husband and two daughters. (AR 143.)

The record in this case documents Dow's life-long struggle with significant mental health issues. Dow underwent psychotherapy throughout childhood and as a young adult, beginning in 1976. (AR 188, 210-11, 239, 292, 350.) A psychometric evaluation in 1980 led to a diagnosis of "schizoid disorder of childhood." (AR 237.) In 1984, Dow was admitted to Mount Ascutney Hospital and diagnosed as having "adjustment disorder with somatization." (AR 252). As both a child and an adult, Dow was consistently diagnosed as suffering from a personality disorder, among other mental impairments. (AR 294, 493-94, 560.) In particular, Dow's childhood primary care physician, Thomas Downs, M.D. stated that:

> By age 11 [Dow] was having significant difficulty with social interaction to the extent that she was seeing a psychologist. In subsequent years she saw other psych professionals and at age 15 was diagnosed with schizoid personality disorder. Personality disorders tend to be lifelong.

(AR 560.) As a treating psychiatrist summarized in 2005, Dow "has a fairly extensive history of counseling through childhood and adolescence related to problems with short temper and violent behavior, as well as some self-destructive behavior." (AR 292.)

More recent treatment records from 2005-2006 further document Dow's extensive psychiatric medical history, including incidents of violent and self-destructive behavior, cutting, and obsessive/compulsive behavior and suicidal ideation. (AR 292-308, 341,

2

337.) Dow's treating psychiatrist at that time, Douglas Southworth, M.D., listed Dow's diagnoses as borderline personality disorder and recurrent major depressive disorder. (AR 296.) Both Dr. Southworth and Dow's primary care physician, Amanda Ratliff, M.D., prescribed several medications in efforts to help manage Dow's symptoms, but treatment notes report that Dow "is wary of medications," often does not fill them, and experiences intolerable side effects. (AR 292-93, 295, 298, 304, 307-08.) Dr. Southworth's treatment notes further reflect that Dow was hospitalized overnight at Dartmouth-Hitchcock Medical Center (DHMC) in March 2006 for a psychiatric emergency and that Dow was in daily contact with her therapist. (AR 298, 327.) Primary care physicians' treatment notes consistently reflect a diagnosis of borderline personality disorder, as does a discharge summary form DHMC. (AR 315, 337 ("Says she does not like medications, then asks for more. Quite possibly BPD."), 472, 476, 479, 481, 485, 488, 491, 493, 498, 500, 504, 507, 509, 511.) In October 2007, Dow was hospitalized two more times for psychiatric emergencies because of suicidal thoughts. (AR 451.)

In her 2008 Function Report, Dow wrote that she experiences hallucinations daily and that she struggles to control tendencies to inflict self-harm:

> I see things and hear things . . . that the rest of my family is not seeing and hearing. I see an old lady standing in the road and it scares me very bad, I always look back in my mirror when I'm driving in my car is when I see her and I make sure she's not real. I know I'm not crazy because if I was then I wouldn't have the sense to look back and make sure I didn't just run someone ever. The other night I saw a ghost in my bedroom window. . . . I feel stuck and trapped because I want to cut and punch.

(AR 208, 211.)

On December 5, 2007, Dow filed an application for disability insurance benefits, which was denied initially and on reconsideration.[1]  (AR 58-64, 142-45.)  In the application, Dow alleges that she became unable to work on July 15, 1993 due to mental health impairments, chronic sinus infections, and ongoing problems with her feet following bunion surgery.  (AR 11.)  On December 7, 2009, Administrative Law Judge ("ALJ") Thomas Merrill conducted a hearing on Dow's application.  (AR 21-57.)  Dow appeared and testified, and was represented by counsel.  (*Id.*)  Additionally, vocational expert ("VE") Richard Hall was present and testified at the hearing as did Dow's sister.  (AR 21.)  Both Dow and her sister testified that, at the time of the hearing Dow was continuing with treatment for her mental health symptoms through a community treatment program "for the chronically and severely mentally ill" (AR 42), and that, according to both Dow and her sister, Dow had been sick for as long as they could remember.  (AR 29, 34, 41, 49.)  Dow and her sister further testified that, after 1993, Dow experienced significant difficulty in providing adequate care for her children and received significant assistance from extended family and community agencies.  (AR 30-31, 45-51.)

On January 4, 2010, the ALJ issued a decision finding that Dow was not disabled under the Social Security Act from her alleged onset date of July 15, 1993 through her date last insured of December 31, 1998.  (AR 9-15.)  The Decision Review Board affirmed the ALJ's decision on April 8, 2010, making the ALJ's decision the final

---

[1] Dow filed an application for disability insurance benefits in 1988 which was denied at the initial level of review.  Dow did not appeal this determination.  (AR 153.)

4

decision of the Commissioner. (AR 1-5.) Having exhausted her administrative remedies, Dow filed her Complaint in the instant action on May 27, 2010. (Doc. 3.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009)

(clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing the first step of this sequential analysis, ALJ Merrill first determined that Dow had not engaged in substantial gainful activity since her alleged onset date of July 15, 1993 through her date last insured of December 31, 1998. (AR 11.) At step two, the ALJ found that Dow had the medically determinable impairments of "recurrent sinus infections and metatarsus primus varus with hallux valgus and bunion bilaterally – status post bilateral osteotomy." (*Id.*) The ALJ concluded that neither of these impairments were severe, however, and therefore did not proceed to the remaining steps. In addition, the ALJ found that Dow's mental impairments were not medically determinable because "there is no evidence of any mental health diagnoses during the relevant period at issue, July 15, 1993 through December 31, 1998." (AR 13.) The ALJ accordingly concluded that Dow had not been under a disability, as defined in the Social Security Act, at any time from July 15, 1993, the alleged onset date, through December 31, 1998, the date last insured. (AR 15.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir.

7

1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

Dow argues that the ALJ erred by (1) concluding that she had no medically determinable mental health impairments; (2) failing to credit the opinions of her treating physicians and psychologist; and (3) finding that her reported symptoms were not credible. (Doc. 10 at 1.) Her arguments address only the ALJ's determination relative to her alleged mental health impairments. The Commissioner asserts that the ALJ's decision is supported by substantial evidence and complies with applicable legal standards. (Doc. 18 at 1.)

As an initial matter, the Commissioner argues that the Court should not consider several records Dow submitted after the ALJ's decision but before the DRB's decision. The records at issue include a letter from Dow's childhood psychologist summarizing her treatment by providers under his supervision and additional records from a therapist post-dating Dow's date last insured. (Doc. 18 at 9, 12.) The DRB reviewed this evidence but decided that it did "not raise a reasonable probability of changing the outcome of the decision" and therefore did not "admit[ ] [it] into the record for consideration." (AR 2); 20 C.F.R. § 405.373(b). As a result of the DRB's rejection of this evidence, the Commissioner contends that it is not part of the record before the Court.

The Court need not reach the issue of whether this evidence is part of the administrative record on appeal. *Cf. Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) (holding that evidence submitted to Appeals Council following the ALJ's decision

becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision). Even without consideration of this evidence, remand is required in this case because the ALJ erred at step two by concluding that Dow had no medically determinable mental health impairment.

## I.     Mental Health Impairments

As noted above, the ALJ did not reach the question at step two of the sequential process of whether Dow had a severe mental health impairment. The ALJ determined that Dow had *no medically determinable* mental health impairment, let alone one that would be considered severe under the regulations. The regulations define a medically determinable impairment as one that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508. The claimant bears the burden at step two of establishing that she has a medically determinable impairment and that the impairment is severe. *Butts*, 388 F.3d at 383. The step two severity regulation "constitutes a de minimis screening device" and the Commissioner "is not precluded from implementing a threshold test of medical severity to screen out claims that would clearly be disallowed." *Gonzalez-Ayala v. Sec. of Health and Hum. Servs.*, 807 F.2d 255, 256 (1st Cir. 1986); *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), SSR 85-28, 1985 WL 56856 (1985).

The ALJ's conclusion that Dow had no medically determinable mental health

9

impairment is not supported by substantial evidence. As set forth above, the record in this case is replete with evidence establishing that Dow has suffered from mental health impairments for the majority of her life. Dow was undergoing mental health treatment beginning at an early age and was placed in an alternative school setting to accommodate her mental health impairments. (AR 164-65, 188, 210-11, 237, 239, 292, 350.) Psychometric testing yielded a diagnosis of schizoid disorder of childhood in 1980. (AR 237.) As Dow matured, treating physicians consistently diagnosed her as having borderline personality disorder based upon her signs and symptoms. (*See, e.g.*, AR 472, 476, 479, 481, 485, 488, 491, 493, 498, 500, 504, 507, 509, 511.) Although Dow's counsel was able to obtain very few treatment records from the period at issue, nothing in the record indicates that Dow's condition ever went into remission or was cured for the period at issue or that Dow stopped undergoing treatment for any significant period of time. To the contrary, both Dow and her sister testified at the hearing that Dow's mental health impairments and treatment had been ongoing since Dow's childhood. (AR 28-29, 34, 41, 49.)

      The ALJ reasoned that because there was no evidence of any mental health diagnoses during the relevant period at issue, it necessarily followed that Dow had no medically determinable mental health impairment. A lack of contemporaneous evidence, however, does not necessarily preclude a claimant's entitlement to benefits. *Arnone v Bowen*, 882 F.2d 34, 39 (2d Cir. 1989); *see Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) (noting that "existence of a pre-existing disability can be proven by a retrospective opinion") (citing *Jones v. Sullivan*, 949 F.2d 57, 59-60 (2d Cir. 1991)).

Indeed, this Court recently held that the ALJ erred by declining to infer an onset date for a mental health impairment when his failure to do so was based upon the ALJ's reasoning that "there [was] no medical evidence that would allow the ALJ to assess [the claimant's] psychological state during the relevant period" and "there [was] simply no evidence of medical treatment for a psychologically based impairment during the period under review." *Plumley v. Astrue*, No. 2:09-CV-42, 2010 WL 520271, at *7 (D. Vt. Feb. 9, 2010); s*ee Beasich v. Comm'r of Soc. Sec.*, 66 F. App'x 419, 429 (3d Cir. 2003) ("The fact that a claimant may be one of the millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis to reject that an impairment existed.") (quotation and citation omitted); *Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993) ("[L]ack of evidence alone is not sufficient to support a finding that an impairment did not exist at a disabling level of severity.").

The ALJ's conclusion that Dow had no medically determinable mental impairment during the period at issue is also not supported by the Psychiatric Review Technique performed by state agency consultant Edward Schwartzreich, M.D. (AR 540.) Dr. Schwartzreich specifically declined to check the box stating that Dow had no medically determinable mental health impairment, instead opining that there was insufficient evidence to make a determination. (*Id.*); *see Meyer-Williams v. Comm'r of Soc. Sec.*, No. 8:09-cv-1954-T-17MAP, 2011 WL 843964, at *5 (M.D. Fla. Feb. 17, 2011) (reversing and remanding where state agency consultant's Psychiatric Review Technique found insufficient evidence to make a determination of impairment); *Stidham v. Astrue*, No. 09-2362-JWL, 2010 WL 3862030, at *5 (D. Kan. Sept. 27, 2010) (finding record "clearly

inadequate to make a disability decision" and remanding for further development where state agency consultant found insufficient evidence to complete the Psychiatric Review Technique).

The medical records cited by the ALJ in support of his finding that Dow had no medically determinable mental health impairment unfairly characterize evidence in the record. For example the ALJ stated that "an overview of [Dow's] past medical history done in 1994 did not include any past mental health issues." (AR 13.) In support of this statement, the ALJ referenced a DHMC outpatient treatment record documenting Dow's treatment for a sinus infection. This treatment note provided only that Dow's "past medical history is remarkable for problems with ovarian cyst. She has no other surgery and no other chronic medical problems." (AR 275.) There are several reasons why this treatment record does not support the inference that Dow's medical history did not include mental health issues.

First, contrary to the ALJ's characterization, the note is not a complete "overview" of Dow's medical history. Rather, it was made in the context of treating Dow for a sinus infection and appears to have been made by a physician who did not have an ongoing treatment relationship with Dow. Second, the purported medical history apparently also omitted any reference to Dow's foot pain, impairments, and foot surgery which occurred during 1987-88 (AR 679-93) or reference to her childhood psychiatric treatment (AR 188, 210-11, 237, 239, 292, 350). Third, treatment notes from 2007 and 2008 from Dow's primary care physicians at Mount Ascutney Hospital Physicians Practices summarized Dow's medical history more thoroughly, and consistently included in the

summary "depression/anger issues/borderline personality disorder as per psychiatry and PTSD." (AR 472, 476, 479, 481, 485, 488, 491, 498, 500, 504, 507, 509, 511.) Finally, other records, discussed above, similarly support such a medical history. (AR 188, 210-11, 237, 239, 252, 292, 350.)

Similarly, the ALJ stated that "[i]t does not appear that the claimant complained of mental health symptoms during [the period at issue]." (AR 13.) This statement is contradicted by hearing testimony. Although many of Dow's mental health treatment records during the period at issue were not included in the record, Dow's testimony clearly establishes that she was undergoing treatment for mental health symptoms between 1993 and 1998 but that her attorney had been unable to obtain these treatment records. Specifically, the ALJ asked Dow:

> Q    So, between July 15, 1993 and December 31, 1998, what were you doing?
>
> A    Well, we had counseling . . . . I wasn't doing very well, and emotionally I guess. I wasn't sleeping or eating and stuff, so we went to therapy with a lady named Marian Waddell. It, it was a while, but I don't think [my attorney] was able to get her records.
>
> . . . .
>
> Q    So, during the period of July 15 '93 and December 31 '98, were you seeking employment or were you . . . at the home . . . raising children?
>
> A    I was having therapy when we could afford it and, and raising our kids.

(AR 28-29.) Dow's hearing testimony clearly states that she continued with mental health treatment during the period at issue. Whether or not Dow "complained of mental

13

health symptoms" to her providers at that time is unknown based upon gaps in the record and the ALJ improperly inferred that she did not complain of mental health symptoms.

Based upon the above, I find that the ALJ's step two determination that Dow had no medically determinable mental health impairment is not supported by substantial evidence. I therefore recommend that the Court order the Commissioner to conduct a new hearing and issue a decision that properly applies the five-step sequential process based upon a finding at step two that Dow's mental health impairments are medically determinable. Whether the Commissioner finds that Dow was disabled during the relevant time period upon remand will depend upon, among other issues, the ALJ's determination with respect to (1) whether Dow's mental health impairments are severe and, if so, when they became severe; and (2) whether Dow retained the RFC during the period at issue to perform her past relevant work or some other work. *See* SSR 96-3p, 1996 WL 374181 (July 2, 1996); 20 C.F.R. §§ 404.1545, 404.1520a. The ALJ may find it necessary to call upon a medical advisor or further develop the record in order to infer an onset date. *See* SSR 83-20, 1983 WL 31249 (S.S.A. 1983).

## Conclusion

For the reasons stated above, I recommend that Dow's Motion to reverse and remand (Doc. 10) be GRANTED in part, and the Commissioner's Motion to affirm be DENIED (Doc. 18). If the Court adopts this recommendation, it need not further address Dow's remaining arguments given that they will necessarily be addressed upon remand.

Dated at Burlington, in the District of Vermont, this 4th day of August, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).